

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00100-CV
_____

IN THE INTEREST OF W.T., A CHILD

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 28,883; Honorable Dan Mike Bird, Presiding

July 20, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, W.T., appeals from the trial court's order terminating his parental rights

to his child, W.T.[1]  By a sole issue, he contends the trial court committed reversible error

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2020).  *See also* TEX. R. APP. P. 9.8(b).  To avoid confusion, the father will be referred to as W.T. and his child as "child" or "daughter."  The child's mother's parental rights were also terminated but she did not appeal.

in finding by clear and convincing evidence that termination of his parental rights was in the child's best interest. As reformed, we affirm the trial court's order.

## BACKGROUND

On September 26, 2019, Appellee, the Texas Department of Family and Protective Services, received a report that the child at issue, then four months old, was living with W.T. in a home without utilities. The living conditions were unsanitary with debris and garbage "scattered everywhere." There were allegations that the parents were also using methamphetamines. Both parents declined drug tests and the Department obtained a court order to aid in the investigation. The order allowed an investigator access inside the home to test the child for drugs. A hair follicle test produced a positive result for high levels of methamphetamines and amphetamines. The child was then removed from the home and placed with a foster family.

During the proceedings, the child's mother was incarcerated in Galveston for assaulting the child's grandmother. W.T. has a criminal history and a pending criminal charge for child endangerment that stems from the child's removal. He invoked his Fifth Amendment privilege to not testify during the termination proceedings.

At the final hearing, the caseworker offered evidence that neither parent had completed the family service plans. W.T. had a positive test result in March 2020, and his numerous no-shows for testing were presumed positive by the Department. The caseworker testified to W.T.'s criminal history for possession, burglary, theft, and the pending endangerment charge. She recommended termination of W.T.'s parental rights and opined that to do so was in the child's best interest.

2

At the conclusion of the testimony, the trial court found sufficient evidence to terminate W.T.'s parental rights on the following predicate grounds:

> (1) knowingly placed or knowingly allowed his child to remain in conditions or surroundings which endangered her physical or emotional well-being;
>
> (2) engaged in conduct or knowingly placed his child with persons who engaged in conduct which endangered her physical or emotional well-being;
>
> (3) constructively abandoned his child who had been in the permanent or temporary managing conservatorship of the Department or an authorized agency for not less than six months and: (a) the Department or authorized agency had made reasonable efforts to return the child; (2) he had not regularly visited or maintained significant contact with the child; and (3) he had demonstrated an inability to provide the child with a safe environment; and
>
> (4) failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the child's return who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under chapter 262 for abuse and neglect.

The trial court also found that termination of W.T.'s parental rights was in his child's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), and (O), (b)(2) (West Supp. 2020).

APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) of the Code and that termination of that relationship is in the best interest of the child.  *See* § 161.001(b)(1), (2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).  The burden of proof is by clear and convincing evidence.  § 161.206(a) (West Supp. 2020).  "'Clear and convincing evidence' means the

3

measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019).

### STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional magnitude. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or

4

conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25).[2] We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### BEST INTEREST

W.T. does not challenge any of the statutory grounds for termination and as a result, the trial court's findings related to those grounds are final. Instead, he argues the trial court committed reversible error in finding sufficient evidence that termination of his parental rights was in his child's best interest. We disagree.

The Department was required to prove by clear and convincing evidence that termination of W.T.'s parental rights was in his child's best interest. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable fact finder could have formed a firm

---

[2] W.T. presents his factual insufficiency argument relying on a traditional factual sufficiency standard which the Supreme Court determined was inadequate to afford the protections inherent in the clear and convincing standard of proof. *See In re J.F.C.*, 96 S.W.3d at 264-66.

belief or conviction that termination of his parental rights was in his child's best interest can we conclude the evidence is legally insufficient. *Id.* (citing *In the Interest of J.F.C.*, 96 S.W.3d at 266).

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* § 263.307(a) (West Supp. 2020). To assess the trial court's best interest finding, we consider factors enumerated in the non-exhaustive list set forth in section 263.307(b) of the Family Code. One of those factors is providing the child with a safe physical home environment. § 263.307(b)(12)(D).

Additionally, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371-72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The absence of evidence of one or more of these factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27.

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest.  *See In re C.H.*, 89 S.W.3d at 28.  *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013).  The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence.  *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).  Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest.  *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

### ANALYSIS

The argument portion of W.T.'s brief is a repetition of an outdated standard of review for cases in which parental rights are terminated.  He presents two sentences as his arguments for reversal of the trial court's termination order.  Those arguments are that (1) the Department failed to present sufficient evidence of the *Holley* factors and (2) the evidence does not rebut the presumption that it is in a child's best interest to be raised by a parent.  We disagree with his assessment of the evidence.

Initially, the child was placed with a foster family where she was doing well.  The Department later conducted a kinship safety evaluation of a nephew of the child's mother as a possible placement with relatives.[3]  At a hearing on a *Motion to Move Child from Current Placement*, the Department advised the trial court that a home study had been

---

[3] The Department investigator explained that a kinship safety evaluation was conducted to determine if the new placement was a safe environment.  The male familial placement has a criminal history but it was outside the five-year window which would have resulted in automatic denial of a home study.

7

approved and the nephew and his wife were in the process of obtaining a license to adopt the child if that option became available. The caseworker confirmed that the nephew and his wife have great jobs. She also testified that it would be in the child's best interest to stay connected with family.

The nephew testified that he and his wife wish to care for W.T.'s child. The nephew attested to the ability to provide the child with a loving family and assured the trial court that all her needs would be met. They have two other children and have a stable home near San Antonio. They have stable employment with an energy company. They own a two-story house with four bedrooms and two bathrooms and also have a guest house with two bedrooms and one bathroom.

Regarding his criminal history, the nephew explained he had a DWI in 2012 and a burglary in 2013. An assault charge against a former girlfriend who was drunk was dismissed the next day. The caseworker testified she had no concerns with the nephew's criminal past. She opined that the nephew did not have a problem with alcohol.

The nephew's wife testified that before her employment with the energy company she served in the Air Force for thirteen years. She testified that she and her husband are "huge family" persons and they want to raise W.T.'s child rather than have her raised by strangers. They also have a support group of family and friends they depend on if they need assistance with their children. The trial court approved a change in foster parents.

At the final hearing, the caseworker testified the child, almost two years old at that time, was too young to express her desires. However, the child does refer to the foster parents as "mom" and "dad" and is bonded with them. *See In re U.P.,* 105 S.W.3d 222,

230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The caseworker continued that the child's familial placement provides her with a safe and stable home environment and plans for a positive future. The child attends daycare where she has a curriculum to prepare her for schools that have already been selected. She takes dance classes and is involved with the family's church. The family enjoys outdoor activities. The caseworker did not have any concerns with the child's placement.

Testimony was presented that the child's mother has since given birth to another child and that child is also in the care of the mother's nephew and his wife. The caseworker was unsure whether the foster parents had possessory rights. The placement of the new child allows W.T.'s daughter to be raised with her sibling. The long-term plan for the nephew and his wife is to adopt W.T.'s daughter which will provide her with permanency. When the caseworker was asked if it was in W.T.'s daughter's best interest to return her to her father, she answered "[n]o" and recommended termination of his parental rights.

The trial court was also allowed to consider evidence in support of the predicate grounds in making the best interest determination. The evidence established that W.T. had a history of drug use. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). He also had an extensive criminal history and a pending charge for endangering his daughter. The caseworker confirmed that W.T. did not complete his family service plan which was reviewed with him on several occasions. Based on the evidence presented, we conclude it was sufficient to meet the clear and convincing burden of proof required to support the trial court's finding that termination of W.T.'s parental rights was in his daughter's best interest. W.T.'s sole issue is overruled.

9

**REFORMATION OF FINAL ORDER**

The *Final Order in Suit Affecting Parent-Child Relationship with Termination of Parental Rights* reflects that W.T. is a male child. However, the caseworker's testimony and the *Petition in Aid of Investigation for Child Abuse* reflect that W.T. is a female child. We reform page 2 of the final order to reflect "Female" in the space provided for "Sex" which identifies the child's gender.

**CONCLUSION**

As reformed, the trial court's order terminating W.T.'s parental rights to his daughter is affirmed.

                                    Patrick A. Pirtle
                                    Justice